PEOPLE, PLAINTIFF AND APPELLEE, *v.* ECHAVARRY ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of San Juan in a Prosecution for a Crime Against Public Justice.

No. 1438.—Decided January 19, 1920.

PLEADING—DEMURRER—INFORMATION—DUPLICITY.—A demurrer pleaded to the information at the trial on the ground that the information charges more than one offense is not privileged but of a formal nature and comes too late.

ID.—INFORMATION—PUBLIC JUSTICE.—When the information charges a series of closely related acts which lead to the commission of the principal offense (in this case one against public justice), although some of these acts separately might constitute an offense, it cannot be maintained that the information charges more than one offense.

The facts are stated in the opinion.

*Messrs. Miguel Guerra* and *José de Jesús Tizol* for the appellants.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

The defendant was convicted of a crime against public justice. During the trial he presented a so-called demurrer alleging that the complaint charged more than one offense. The court overruled the said demurrer.

In *People v. Paris,* 25 P. R. R. 106, after citing sections 144, 145, 146 and 152 of the Code of Criminal Procedure, this court pointed out that the demurrer must be presented on the day of the arraignment, or within such further time as the court may allow, and that the action of the court in overruling a demurrer could be supported on the ground that the objection came too late. Among other reasoning and authority, we held that it was not fair that the court should be called upon to consider questions in such a summary manner, and we said:

"If counsel have a real objection, especially if it is a formal or technical one, it should not come as a surprise at the trial. We ourselves shall be disposed to disregard a demurrer so presented for any matter that is not of the class called privileged."

And again, page 107:

"We do not mean to imply that a defendant should be at all strictly limited in presenting objections to the information. If he makes application therefor before the trial and especially if he has been unrepresented by counsel at the time of the arraignment, the court should be extremely liberal, but we do wish to stress the point that an objection to the information of a formal nature, made on the day of the trial, comes too late. The time for pleading has passed; the time for raising objections has passed, unless they are of a privileged nature. The court should hear and dispose of a demurrer before the day of the trial and counsel have a right to insist on this."

In this connection the case of *United States* v. *Gooding,* 12 Wheaton, 477, is applicable.

Anything of a merely formal nature is thus waived if not presented by leave of the court. Is a demurrer for duplicity purely one of form? The authorities differ on this point, but we hold that an objection for duplicity should not be made in the form of demurrer at the time of the trial, because the defendant has other protective measures at hand. He may, if the information leaves a real doubt as to the charge he must defend, require the *fiscal* to elect the offense on which the government seeks a conviction, or pray some instruction from the court. In this way, or perhaps others, the defendant may protect himself, but he is not entitled to have the information dismissed and delay the trial on the ground of duplicity if such objection is not made in due time.

But, giving the appellant the benefit of a doubt as to whether the court permitted the demurrer and the government made no due objection, we do not find that the information is really double. We copy it (translation):

"The *fiscal* files an information against Antonio Echavarry, José Echavarry, Ramón Echavarry, José F. Morales, Victor Espino and Bernardo Marrero, charging a crime against public justice, a misdemeanor, committed as follows:

"On or about June 21, 1918, in the municipality of Loíza, within the judicial district of San Juan, Antonio Echavarry asked his chief for leave of absence on that day under the pretext that he was ill, and having reached an understanding with his brothers José and Ramón Echavarry and with Victor Espino and Bernardo Marrero, they connived with José F. Morales unlawfully, wilfully and maliciously to arrest José Sánchez, a land-owner, merchant and resident of the ward of Hato Puerco, Loíza, with a view to obtaining a reward for his release; and to that end and under the pretense that they had José F. Morales in custody, went to the commercial establishment of José Sánchez, where, all and each· of them feigning to be policemen and detectives of the Insular police, and under the pretext that they wanted José Sánchez to identify José Morales, they persuaded him to leave the house, and when outside arrested him without authority therefor, without any complaint against him and without his having committed any crime, and contrary to his will and in spite of his protests, conducted him to San Juan in an automobile; and, as he refused during the journey to compensate them for his release, he was taken to the Police Station at Puerta de Tierra on the charge that he was a conspirator, and therefrom to San Juan, where he passed the night under custody until his release the following day after an investigation by the proper authorities.

"This is an offense against the law in such cases made and provided and against the peace and dignity of The People of Porto Rico. (Sd.) Luis Campillo, District Attorney."

The information specifically sets up that the offense is one against public justice ·and hence the government could by due objection at the trial be limited to prove such an offense.

More especially, the facts in the information constitute but a single transaction. It is true that there are some words therein that point to a conspiracy or to an attempted extortion, but the real crime charged is set out in section 135 of the Penal Code as follows:

"Every public officer, or person pretending to be a public officer, who, under the pretense or color of any process or other legal authority, arrests any person or detains him against his will, or seizes or levies upon any property or dispossesses any one of any lands or property without a regular process or other lawful authority therefor, is guilty of a misdemeanor."

Here the defendant joined with others to take the prosecuting witness from his house, to subject him to various forms of pressure and intimidation, all under the guise that the defendant and his associates were officers of the law. The impersonation was one and single and went with every act that the defendant did in pursuance of his evil design and all done in a closely related sequence. In the notes to *Ben v. State,* 58 Am. Dec. 242, the principle is thus stated:

"Where several acts, when done by the same person, are but successive stages in the progress of a criminal enterprise, constituting as a whole but one offense, though either when done alone might be an offense, they may well be charged in a single count." Citing authorities. See also Bouvier, Duplicity, Vol. 1, 626.

It was also objected at the hearing that the information failed to set out either that the defendant and his associates were public officials or that they impersonated the same. It sufficiently appears in said information that before the arrest was concluded and the prosecuting witness lodged in prison the defendants presented themselves as policemen and detectives and they were acting all the way through as if they had the authority to arrest.

The judgment must be

*Affirmed.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.